## WARD V. KADEL.

1. CONTRACTS: *Mutual; Non-performance by one releases the other.*
   Where there is a mutual contract for successive acts to be performed, the refusal on the one side to perform will justify the other in treating the contract as rescinded.

2. SAME: *Same.*
   In mutual contracts for the performance of successive acts, one party cannot recover damage for non-performance by the other, if such failure was occasioned by his own violation of the contract, or his failure or refusal to perform its stipulations.

3. MARKET VALUE: *Evidence of.*
   Evidence of what one can purchase a commodity at from a particular party is not evidence of its market value.

4. CONSTRUCTION OF CONTRACT: *Building material; What is.*
   One who contracts to deliver material for building a house in payment of supplies, cannot refuse to deliver *lumber* to the assignee of the contract on the ground that he was a manufacturer of brick, and not of lumber, and that brick, and not lumber, was contemplated in making the contract.

APPEAL from *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.

The opinion states the case.

*U. M. & G. B. Rose*, for appellant:

There was no breach of the contract if plaintiff was ready to deliver, on demand, any kind of ordinary material for house building.. 2 *Parsons on Cont.*, sec. 657. A demand of "some bricks" or "some lumber" not sufficient. Defendant should have stated how much he claimed to be due and demanded payment in building material. Until this was done there was no default. *Rice* v. *Churchill*, 2 *Denio.*, 145 ; *Mosey* v. *Euke*; 5 *Minn.*, 392 ; *Smith* v. *Tiffany*, 36 *Barb.* 23 ; *Wear* v. *Jacksonville R. R.*, 24 *Ill.*, 593.

The modifications made by the court rendered the instructions asked by plaintiff irrelevant and misleading. The instruction given on motion for the defendant is open to the same objection. The court gave the jury no instruction of what would amount to a violation of the contract. It is not the duty of the court to give general principles of law to the jury, but it should apply the propositions of law to the particular facts of the case. *Turner* v. *Toler*, 34 *Mo.*, 461 ; *Coal Oil Co.* v. *R. R. Co.*, 45 *Ib.*, 85. General instructions that apply to one case as well as to another are abstract.

No proper demand was ever made.

*W. L. Terry*, for appellee:

Lumber is "building material," and it made no difference whether plaintiff was engaged in the manufacture of it or not. A proper demand was made for it and the refusal was a violation of the contract. 38 *Vermont*, 486. All objections to the *form* of the demand were waived. *Parsons on Cont.*, *Vol.* 2, *p.* 645 (*6th Ed.*)

The instructions related to the *issue directly* made by the pleading, and were not *abstract*, because no explanation was given of what was meant by "violation of a contract." *Gans* v. *Holland*, 37 *Ark.*, 483 ; *Palmore* v. *State*, 29 *Ark.*, 265.

An instruction is good if it *fairly* states the *law* on the general state of facts. 17 *Iowa*, 250.

If Ward violated his contract, appellee could recover upon a *quantum valebat*. *Desha* v. *Robinson*, 17 *Ark.*, 252 ; 39 *N. H.*, 431 ; 10 *Ill.*, 298 ; 9 *Ind.*, 166 ; 7 *Black. Ind.*, 603.

The verdict did "substantial justice between the parties" and should not be disturbed. 34 *Ark.*, 105 ; 23 *Ib.*, 126 ; 15 *Ark.*, 451 ; 24 *Ark.*, 253 ; 19 *Ib.*, 330–1.

EAKIN, J. The appellant, Ward, sued Kadel upon a parol undertaking of the latter, to assume and perform the obligations of a written contract which had, on the twelfth day of January, 1875, been made between said Ward and the firm of Joseph A. Martin & Co. By the terms of the contract said firm had agreed to deliver to Ward, who was lessee of the State penitentiary, all the beef which might be necessary to feed the convicts from that time until the first of January, 1876. The beef was to be fresh, and a good merchantable article ; to be delivered in such quantities, and at such times as Ward might designate ; Ward, on his part, agreed to pay for the same at the rate of 3 1-2 cents per pound, as follows : Settlements were to be made at the end of each month, upon which Ward was to pay one half of the amount then due in current funds, and place the other half to the credit of the firm, to be paid by Ward in work or material, in building a house, or furnishing material, or both, for the firm, at a cash basis. There were other provisions in the contract not affecting the point raised in this suit.

A few days afterwards, said firm by written consent of Ward, and for a valuable consideration, assigned to defend-

ant, Kadel, the benefits and burdens of this contract. Kadel assumed them, but signed no writing. He furnished beef according to its terms for about two months, and then refused any longer to do so. This suit is for damages, laid at $2500.

The answer presented several issues, some of which were disposed of in plaintiff's favor. That upon which the questions presented by the appeal arise, was in effect, that Ward had upon his part first violated the terms of the contract, whereby defendant became entitled to consider the same as rescinded, and on his part to recover, by way of set off, the money value of the beef delivered, which was to be paid for in work or material. It is well to remark, in passing, that counsel make no point upon the propriety of entertaining either a plea of set off, or counter claim, in an action for unliquidated damages, where the defendant bases his claim upon his right to rescind the contract altogether.

Upon the trial the jury found for the defendant on the set off, the sum of $435.43, for which judgment was entered. After a motion for a new trial, the plaintiff appealed, and a bill of exceptions was taken.

The motion objects to the instructions given by the court for defendant, and upon its own motion, and to the modifications which the court made before giving them, of those asked by the plaintiff. It assigns, also, that the verdict was not supported by the testimony.

The evidence well supports the verdict as to the amount and value of the beef delivered. The real contest is, as to whether the plaintiff had so violated the contract on his part as to release the defendant from further obligation. There is proof tending, but we think not sufficient, to show that the plaintiff refused to deliver brick to defendant, on his request, at cash rates. There is positive proof that he refused to deliver any lumber on request, stating that he

22–38

had no lumber, and could not furnish it.    Upon the other side there is evidence denying this, and also some tending to show that the defendant refused to carry out the contract because he found it would be ruinous to continue ; and also, partly, because plaintiff refused to settle for beef furnished his family, except upon the same terms as for beef furnished the convicts under the contract.

For the plaintiff, the court instructed the jury that if it were no part of the contract that beef should be furnished to Ward's family, his claim that it should be, would not justify the defendant in refusing to perform the contract as actually made by him.    Also, that they could not find for the defendant any sum for the failure to furnish work and materials, unless they should find that the defendant made a demand for them before filing his answer.

It qualified both these instructions, however, against plaintiff's objections.    The first by adding "unless the jury find that Ward actually refused to perform his part of the contract," and the second, by adding "unless the jury find from the facts that the plaintiff has violated his part of the contract so as to permit the defendant to treat the contract as at an end."

1. CON-
TRACTS
Mutual;
Non-per-
formance
by one re-
leases the
other.
The law is well settled that where there is a mutual contract for successive acts to be performed, the refusal upon one side to perform, will justify the other party in treating the contract as rescinded.

All that was asked was given, and the additions were pertinent to the issues and the evidence, and correctly expressed the law.    There was no error upon this point.

For the defendant the court instructed in effect, that the plaintiff was not entitled to recover any damages for the failure of defendant to fulfill the contract, if such failure was occasioned by a violation of the contract by plaintiff, or

his failure or refusal to perform its stipulations.    This was correct.

The court then, upon its own motion, instructed that a *2. SAME:* mere claim by Ward to have Kadel do what the contract did not require, would not amount to a violation of the contract, unless Ward, upon Kadel's refusal, failed to perform his part of the contract, and added that it was for the jury to say whether Ward had so failed on such refusal.

The instructions contain a very clear and well guarded statement of the law, by which the evidence was to be considered, and were properly given.

Whether or not the evidence can be held to sustain the *3. MARKET VALUE:* verdict must depend on the construction to be given to the *Evidence of.* contract.    There is no sufficient proof that the plaintiff refused to deliver brick at the ordinary cash rates.    He was willing to deliver them at ten dollars per thousand.    The defendant told him he could get them for nine, and there the matter ended.    The plaintiff was not bound to deliver the brick as low as the defendant could purchase them elsewhere, but at the cash price in market.    There might have been some one manufacturing brick under a pressure for ready money, or some one willing to befriend the defendant by allowing him a deduction.    The plaintiff could not be required to make a like reduction, and there was no proof as to the ordinary cash price of brick in market.

Nor is there any sufficient proof that the plaintiff refused to settle for the convict beef, because the defendant refused to allow the family beef to be estimated at the same rates. The latter was outside the contract altogether.    If the proof upon this point has any tendency at all it would be to raise the suspicion that defendant was largely induced to refuse any more convict beef, because the plaintiff refused the enhanced price for that furnished his family.    But this was properly left to the jury.

The defendant testifies that plaintiff did refuse to furnish lumber for building, in such terms as to waive all formal demand for any particular quantity, to be delivered at any named place. This was a violation of the contract on his part, if its terms imposed on him the obligation to deliver lumber. The plaintiff denies that defendant ever called upon him for any materials or work under the contract, but the jury were entitled to determine as to which of them might be mistaken, and the question must be considered as if they believed the demand and refusal had been virtually made.

4. CON-
STRUCTION
OF CON-
TRACT:
Building
material;
what is.

It is shown that at the time the contract was made, Ward was engaged in the manufacture of bricks; that he did not manufacture lumber; and that he was not allowed to work convicts within the limits of Little Rock. The appellant contends that a fair and reasonable construction of the terms of the contract, in accordance with the intention of the original parties, would be that Ward was to deliver such building material as he was manufacturing for sale, and that it was not expected that he should go into the market and buy for defendant, any building material which he did not usually make or have on hand. The contract is not aptly worded, however, to show such intention. If that had been the original intention, and the original parties had endeavored to enforce the written contract, according to its letter, there might possibly have been some relief in equity, on the ground of fraud. But there is no showing that defendant was advised of such intention when he got the contract for valuable consideration, and he became entitled to all its benefits according to the plain import of the language.

The contract was to pay one half the beef bills in work, or materials for building a house. Lumber is timber sawed or split for use in building, and is material essential for building any kind of a house ordinarily used for business or by families. It was not the duty of defendant, in taking

the assignment of the benefits and burdens of the contract, to enquire by what means the plaintiff expected to get the lumber. Upon the other hand it was the duty of plaintiff, if he had meant to confine his obligation to bricks, so to have expressed it in the contract; or at least to have advised defendant, when the latter assumed the contract, that its general terms must be understood only to embrace such building material as plaintiff might have, or be engaged in making. The defendant had the right to demand lumber, and if the jury believed from the evidence that he did so, and that it was refused, they might find such a violation of the contract as would justify their verdict.

Upon the whole case, we think there was no error in refusing the motion for a new trial.

Affirm the judgment.