## Bloomington Electric Light Co. v. Charles Radbourn.

1.   CONTRACTS—*Rescission and Abandonment.*—It is not every failure, neglect or refusal of one party to comply with some of the terms of a contract which will entitle the other to abandon it upon notice to the delinquent.   To justify an abandonment of a contract the failure must be total, such as to defeat the object of the contract.

**Memorandum.**—Assumpsit.  In the Circuit Court of McLean County, on appeal from a justice of the peace; the Hon. THOMAS F. TIPTON, Judge, presiding.  Trial by jury; verdict and judgment for defendant; appeal by the plaintiff.  Heard in this court at the May term, 1894. Reversed and remanded.  Opinion filed October 29, 1894.

### APPELLANT'S BRIEF, A. E. DEMANGE, ATTORNEY.

For particular derelictions and non-compliance in matters not necessarily of first importance to the accomplishment of the object of the contract, the party must still seek his remedy upon the stipulations of the contract itself by an action for damages for its non-fulfillment.  Wentz v. Hefner, 78 Ill. 27;  City v. Joslyn, 136 Ill. 530.

To justify an abandonment, the object of the contract must have been defeated or rendered unattainable by misconduct or default of the other party.  Selby v. Hutchinson, 4 Gilm. 319.

It is well said in the opinion of the court in the case last above cited, " It is not every failure, neglect or refusal to comply with some of the terms of the contract by one party which will entitle the other to abandon the special and solemn obligation entered into by the parties, and by which they had made for themselves the law which was to control them. In order to justify an abandonment of the contract, the failure of the opposite party must be a total one."    Doggett v. Brown, 28 Ill. 495.

### APPELLEE'S BRIEF, ROWELL, NEVILLE & LINDLEY, ATTORNEYS.

If one of the parties to a contract breaks it, either first by a renunciation of the contract; or second, by rendering performance of his part impossible; or third, by a failure of performance on his part where such performance is a condition concurrent with or precedent to the performance of the other party, the latter may rescind the contract; or, in other words, his obligation to perform is discharged by the breach of the former.  Hochster v. De la Tour, 2 E. & B. 678; Frost v. Knight, L. R. 7 Ex. 111; Fox v. Kitton, 19 Ill. 519; Chamber of Commerce v. Sollitt, 43 Ill. 519; Follansbee v. Adams, 86 Ill. 13.

Where the failure of one party is to an extent such as renders his performance different in substance from what was contracted for, the party not in fault may abandon the contract. Leopold v. Salkey, 89 Ill. 412; see, also, Weintz v. Hasner, 78 Ill. 27.

If the object of the contract has been defeated by the failure of one party, the other may treat the contract as abandoned or rescinded. Selby v. Hutchinson, 4 Gilm. 319.

Mr. Justice Pleasants delivered the opinion of the Court.

On July 1, 1892, appellant, by W. V. McKinzie, its superintendent, entered into a contract under seal with appellee, by which it agreed to wire his place of business for eight 32 and three 16-candle power incandescent lamps, and furnish sockets, lamps, and cut out for the same and for one arc lamp, for $10 to be paid by him when the wiring should be done and the lamps, etc. furnished; and also to furnish current for said incandescent lamps for one year, from dark to 7 o'clock A. M., Sundays excepted; and for said arc lamp for that period, from dark to 11 P. M., Sundays excepted, and also, except when prevented by strikes, fire, lightning or accidents, for $15 per month, payable monthly, at the end of each month from the date of said contract. The lamps, sockets and cut-outs were to remain the property of the company, not to be interfered with, but properly protected and cared for by appellee in said building, until the contract should expire and said property be removed by appellant; and appellee was to purchase his renewal lamps of appellant at the rate of $1 each, payable with the current bills at the end of each month.

Appellee's place of business, a liquor saloon and billiard hall, in Bloomington, was wired and furnished with the lamps, etc., and a current, which were paid for by appellee according to his contract and without objection, until the first of October, when at appellee's request the arc light was taken out by appellant, three 32-candle power incandescents substituted, for the reasons assigned by appellee that

the incandescents would distribute the light better over his billiard table and also that they burned all day and the arc did not, and the price was reduced from $15 to $14 per month.  The parties went on under the arrangement, so modified, until December 4th, when appellee cut and pulled out the wires and refused to take the current from appellant any longer.  Appellant, continuing to manufacture and being ready and offering to furnish it according to the contract, brought this suit before a justice of the peace for current for the month of December.  On the trial, upon appeal, in the Circuit Court, the jury returned a verdict for the defendant and the court, after overruling plaintiff's motion for a new trial, rendered a judgment against it for the costs; from which judgment this appeal is taken.

The ground upon which appellee refused to make further payment was the alleged insufficiency of the light furnished for the purpose intended, substantially defeating the known object and purpose of the contract.

Upon a careful consideration of the evidence we think it clearly fails to justify the attempted rescission on this ground.

The concurring testimony of three witnesses, wholly uncontradicted or otherwise in any way discredited, would leave a court or jury without excuse for doubting that in this case the work of wiring the appellee's place of business was of the first class; that the lamps furnished by appellant were of the best kind known in the market and of the full candle power called for; that the current furnished, as shown by the indicator at the power house during the months of September, October and November, 1892, was 52 volts— being two points more than the standard for such lamps, and making the light brighten to that extent—varying therefrom only for a few minutes when the machines were changed between 5:30 and 6 o'clock P. M., and that it was furnished to appellee many hours more per day than was required by the contract.

These witnesses were the superintendent and two linemen of appellant.  They were the parties to whom com-

plaint should have been made or notice given of any defect of the light. The company kept two offices, both reached by telephone, and a man always in attendance to answer calls for service. They testified that they received none except in October, when the three incandescent lamps were substituted for the one arc at appellee's request, made for the reasons stated, and again in December, when the fuse blew or burned out, a pure accident, and a man was promptly sent to put in a new one, the work of only three or four minutes, but was, by appellee, forbidden to do it, with the statement he was going to take light from the other company. The only reason he ever gave for abandoning the contract, so far as they knew, was that appellant was charging him too much, and he could get cheaper light from the other company, to which both the superintendent and the collector of appellant testified, without contradiction.

Appellee did not offer himself as a witness. His bartender, his step-son and three others who more or less frequently visited his place, were all who testified to any trouble on account of the light. Of these, the bartender seemed disposed to be the most effective and important. Yet the fault he found was chiefly with the arc lamp, for which three 32-candle power incandescents were substituted on the first of October. It appears that the billiard room was fifty feet in length, and the one arc light had been used for all the tables. Very probably it was better distributed by having one incandescent for each, which also burned all day. Of the others, aside from his general statement that the lights were poor, the only definite complaint he made was that " they seemed to go down at times. That would last ten or fifteen minutes. Then they would shoot up again. That happened sometimes once a week and sometimes twice." To one annoyed by the failure, what seemed ten or fifteen minutes might have been no more than three or five. He says when it happened, he telephoned or went down to the works, and that some one would come in ten, fifteen or twenty minutes and that " we

were all right after that." He went to the power house once or twice; how often he telephoned, he did not state.

Appellee's step-son says "part of the time there wasn't much of a light, and then they would go out; sometimes go out once a week and sometimes would not. Sometimes it would light up pretty good and then it would go down." To what does testimony so indefinite as to frequency of failure and its extent when it occurred amount? Of what electric light could not as much be truly said?

Edwards was in the saloon and billiard room almost every night in September, October and November. His statement is equally indefinite. They had to stop playing " a good many times," because " the lamps would flicker out for a few minutes and then start up again, and sometimes wouldn't start up at all." He never paid any attention to see, if they got some one to fix them. "The incandescent lamps went out several times when he played billiards. They lit them again when they went out. I don't know whether it was caused by an accident or not."

Hunter says, " On one or two occasions I was in there and the light went out in September, October and November. I am referring to those arc lights." There was no arc light after September, and he didn't know whether the going out was or was not caused by accident.

Sellman was in the place " once in the summer or fall of 1892," and says, " the light went out the night I was there. I don't know whether the fuse blew out or not."

Mr. Brackel, an electrician and telephone manager, whose office adjoined appellee's building, was the only other witness called by him, but he testified that "he never noticed any objection to his lights during September, October and November, 1892."

McKinzie, appellant's superintendent, says he was in there during those months, once or twice a week, and passed there oftener, to see if his light was all right, and it was good; up to the standard; the candle power and voltage all right. But notwithstanding all this, the light will occasionally go down or out for a few minutes, from accidents

which can not be avoided. The fuse, which is put in for safety to the building, may blow out, or the light be dimmed by the slipping of a belt or suddenly increasing the load on the machine. This company furnished current, not for a fixed amount of light, but for such as wanted it, and thus the amount actually used, was constantly and often materially changing. An example given was the Opera House, which suddenly turns on a great number of burners; and so of other places. But the variation, in such case, while unavoidable, lasts not more than five minutes.

We are clearly of opinion from the evidence that such only were the defects or failures of the light furnished by appellant; that they were only occasional, trifling, common, anticipated by the parties, excepted in their contract, and fully accounted for by the causes mentioned. Any further inconvenience suffered by appellee was due to his own neglect to have more lamps and to renew them as necessary occasion required, and that his motive for the change of companies was purely economical, and without regard to the obligation of his agreement. The case is far from being within the rule announced in any of the authorities cited, allowing a rescission or abandonment of the contract. No instance of appellant's neglect to respond to any call made upon it for attention to any trouble from whatever cause arising, was shown.

The finding of the jury is hardly to be accounted for except by the instructions given them, which seem to be contradictory.

On behalf of the plaintiff, the jury were told : " Under the contract introduced in evidence, even if you believe from the evidence that accidents happened whereby defendant's light was affected, or even if you believe from the evidence said light became defective without apparent cause, it was the duty of defendant to notify plaintiff at its power house or office, of such accident or defective light, and to give plaintiff reasonable time to repair such accident or remedy such defect; and defendant had no right under said contract to rescind or annul the same because of such accident or

defective service, unless you believe from the evidence that
such accident happened, or the said light became defective,
and plaintiff, after reasonable notice, neglected or refused
to repair such accident or remedy such defect in said light."

And on behalf of defendant as follows: "The court in-
structs the jury that if the plaintiff company failed to comply
with their part of the contract as to furnishing current in
accordance with the contract, then the defendant had the
right to stop using the light, and that the plaintiff can not
recover for any time after the defendant notified the plaint-
iff that the light was not according to contract and that
he would not use it any longer, if the jury believe from the
evidence that the defendant gave such notice."

And they were further instructed that by the contract the
light to be furnished was to be "a permanent one, and that
if you believe from the evidence that the light was constantly
giving out and did not come up to the agreement of the
plaintiff in their contract, then you should find for the
defendant."

Thus for one side the jury were instructed absolutely, in
substance, that notwithstanding its failure from accident
or otherwise to comply with its contract, the other party
could not rightfully rescind or abandon it, without first giv-
ing notice of such failure and a reasonable time to comply;
and for the other, also absolutely, in substance, that upon
such failure, whether from accident or otherwise, and with-
out regard to its extent, he could rightfully rescind or aban-
don the contract upon, and from the time of mere notice of
such failure.

The jury could not accept either without rejecting the
other. They seem to have accepted the latter, which was
much the farthest from an accurate statement of the law
applicable to the evidence in this case. It is not every
failure, neglect or refusal of one party to comply with some
of the terms of a contract which will entitle the other to
abandon it, upon notice to the delinquent or by any other
means he can use. To justify an abandonment the failure
must be total, that is, such as to defeat the object of the con-

tract or make it unattainable.   Selby v. Hutchin, 4 Gilm. 319;  Doggett v. Brown, 28 Ill. 495.

There was no proof that the wiring of the appellee's place of business was in any way or degree defective or that any lamp furnished was of less candle power than the contract called for.   It did not stipulate for a "permanent" light, by which the jury might well understand one that should be steady and uninterrupted during the time mentioned.   On the contrary it was only for a proper current, and as to that expressly excepted interruptions from accident, and not a single instance is shown in which it was below the standard for a moment of that time, if it ever was, except when it was due to "accident," which means unavoidable causes.

For the errors noted in the instruction given for the defendant and in the refusal to set aside the verdict, as being against the evidence, the judgment will be reversed and the cause remanded.