WEST *v.* BECHTEL.

CONTRACTS—SALE—DELIVERY OF INSTALLMENT—DEFAULT IN PAYMENT — REFUSAL OF FURTHER DELIVERY — DAMAGES.

Defendant contracted to deliver a quantity of wood to plaintiffs. Instead of paying for every car load on delivery, as stipulated in the contract, plaintiffs paid for the first on the arrival of the second, and for the second on the arrival of the third, when defendant refused to make further deliveries. There was nothing in plaintiffs' conduct indicating a design not to perform their part of the contract, and they demanded delivery of the remainder. *Held*, that plaintiffs' mere refusal to pay for the third car load until more was delivered was not such a breach of the contract as would warrant defendant in repudiating the entire contract, and he was, therefore, liable in damages for nonperformance.

Error to Kent; Grove, J. Submitted May 1, 1900. Decided November 13, 1900.

*Assumpsit* by Ben E. West and Judson C. West, copartners as B. E. West & Co., against Charles J. Bech-

tel, for the breach of a contract to deliver wood. From a judgment for plaintiffs on verdict directed by the court, defendant brings error. Affirmed.

*M. L. Dunham*, for appellant.

*Hatch & Wilson*, for appellees.

HOOKER, J. Plaintiffs are coal and wood dealers in Grand Rapids, and the defendant is a dealer in wood at Manton, Mich. The former offered to purchase 400 cords of wood at one dollar per cord, f. o. b. car at Manton, from the latter, if he would ship "right away," promising to remit as fast as the wood should "*come in.*" The offer was accepted. Both offer and acceptance were by letter, the acceptance being dated January 14, 1899. Three cars were shipped, and two were paid for. On February 7, 1899, plaintiffs wrote, asking that wood be shipped faster, stating that they needed the wood. February 22, 1899, the S. P. Bennett Fuel & Ice Company, of Grand Rapids, wrote defendant, inquiring for wood, and offering to buy. February 24, 1899, plaintiffs wrote, saying that, "Your conversation over telephone day before yesterday (22d) confirms our idea that you did not intend to fill contract," adding that, though price had materially advanced, they should expect the wood, and would be seriously damaged if he did not ship it. On February 27, 1899, defendant wrote the S. P. Bennett Fuel & Ice Company, offering some wood at $1.40 per cord. February 28, 1899, defendant replied to the plaintiffs, saying that the plaintiffs had agreed to pay for wood as fast as it came in, and that he had shipped a car February 4th, which, on February 21st, they admitted that they had received two weeks before, but had not paid for, and concluding with a threat to sue if he did not receive his pay. On March 2, 1899, the Bennett Company wrote defendant to ship three cars of wood at $1.40 per cord, adding that it must be seasoned. March 7, 1899, defendant wrote said company that it was not very dry, but was

going fast at $1.40, and asked to know at once if it was wanted. It purchased some wood of him. There was testimony tending to show that in the talk by telephone the defendant said to plaintiffs: "You have not paid for the last you got. When are you going to pay for that?" and that plaintiffs replied, "We will pay for that when we get some more." The defendant testified that plaintiffs said that "they should not pay for it until they got some more," and he replied that they would have to pay for it before they got any. The action was brought by the purchasers to recover damages for a breach of their contract. They also garnished the S. P. Bennett Fuel & Ice Company, which was owing the defendant $100.85. In the justice's court plaintiffs recovered a judgment of $82.80 and costs. The defendant appealed, and in the circuit plaintiffs obtained a judgment for $8.55, and they were allowed full costs.

The circuit judge instructed the jury that:

"Here was a contract whereby the defendant had agreed to deliver a certain quantity of wood right away on board cars up there, and the plaintiffs had agreed to pay for it as fast as the wood came in. The plaintiffs claim that the wood was not being delivered right away; that it was coming several days apart; coming too slow. They claim that they were not satisfied with the way it was being delivered, and that they anticipated, on account of the rise, they might have some trouble. They therefore withheld the pay. Instead of paying for every car load as quick as it came, they paid for the first car load after the second arrived, and the second after the third arrived, and so on, intending fully to pay up when they should receive the wood.

"A contract of this character might be broken up by either party. A refusal to pay—nonpayment according to the terms of the agreement—might, under certain circumstances, constitute such a breach of the contract as would release the other party, and a refusal to deliver might be such a breach of the contract on the part of the defendant as would release the other party, or give him a cause of action. But the particular circumstances connected with the case ought to be taken into consideration.

The mere refusal to pay for a portion of the property delivered until more was received would not alone constitute such a breach of the contract as would warrant the other party, the defendant, in repudiating the entire contract, but, to warrant the defendant in refusing further to perform his part of the contract by delivering the wood which he had contracted to deliver, it ought to be made to appear that there was not merely a refusal to pay at once for the portion already delivered, but the circumstances connected with the whole matter, the conduct of both parties, ought to be taken into consideration, and it should be made to appear, to warrant the defendant in refusing further to deliver, that the conduct of the plaintiffs was such as indicated that they did not intend to perform their part of the contract. I do not think, gentlemen of the jury, that the evidence in this case is sufficient to warrant a finding upon your part that there was such a breach of the contract on the part of the plaintiffs that would justify the defendant in refusing to further perform his contract; and therefore the only questions for you to determine in this case are whether or not the plaintiffs have lost anything on account of the advance in the price —the market price—of wood after the refusal to deliver by the defendant, and, if so, how much have they lost; in other words, what has that advance been?"

Error is assigned upon this, and it is the only important question in the case.

Counsel for the plaintiffs cite several cases in support of the proposition that a mere default in payment of installments is not to be treated as an abandonment of the contract. Among the early cases which recognize the difference between covenants which are precedent and those which are not is *Boone* v. *Eyre*, B. R. East, 17 Geo. III. (1 H. Bl. 273, note *a*). In that case the plaintiff conveyed a plantation in the West Indies, with the stock of negroes upon it, in consideration of an annuity, and covenanted that he had a good title to the former and was lawfully possessed of the latter. In an action for the nonpayment of the annuity, a plea was filed alleging that the plaintiff was not, at the time of making the deed, lawfully possessed of the negroes, and so had not a good title to con-

vey. The plaintiff demurred to the plea. Lord Mansfield said:

"The distinction is very clear: Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent. If this plea were to be allowed, any one negro not being the property of the plaintiff would bar the action."

Judgment was given for the plaintiff.

The case of *Boone* v. *Eyre* was commented on by Lord Loughborough in the case of *Duke of St. Albans* v. *Shore*, 1 H. Bl. 270, 278. In the latter case the parties were to exchange lands described at prices agreed upon. It was further agreed that:

"All timber trees, elms, and willow trees which then were upon any of the above estates to be fairly valued by two appraisers, and the prices or values thereof to be paid by the respective purchasers of the estates at the time before mentioned."

The defendant refused to perform, and, in an action for a breach of the contract, filed a plea that the plaintiff, after making the agreement, cut down and destroyed 500 timber trees, 500 elms, and 500 willow trees upon the estate, thereby making it impossible for him to perform his contract. A general demurrer was filed by the plaintiff. Lord Loughborough said:

"It is clear in this case that, unless the plaintiff has done all that was incumbent on him to do in order to create a performance by the defendant (if I may use the expression), he is not entitled to maintain the action. If he has not set forth a sufficient title, judgment must be against him, whatever the plea is; and, if the plea be a good bar, the same consequence must follow. It was argued on the part of the plaintiff that the agreement respecting the trees was not a condition precedent, and therefore a breach of that agreement could not be pleaded in bar of the action. In support of this argument the case of *Boone* v. *Eyre* was cited; but in that case, though

the court of king's bench held the plea insufficient, yet they laid down a clear and well-founded distinction,—that, where a covenant went to the whole of the consideration on both sides, there it was a condition precedent, but where it did not go to the whole, but only to a part, there it was not a condition precedent, and each party must resort to his separate remedy; and for this plain and obvious reason: Because the damages might be unequal. The cases, also, of *Hunlocke* v. *Blacklowe*, 2 Saund. 156, and *Cole* v. *Shallet*, 3 Lev. 41, were cited as being in favor of the plaintiff. But it is unnecessary to enter into the discussion of those cases, though perhaps doubts may reasonably be entertained of the doctrine laid down in Saunders, and though the case cited by him in his argument may deserve full as much consideration as that which was the subject of the determination of the court; for we found our opinion on the present case on the ground of the distinction in *Boone* v. *Eyre,* which we think a fair and sound one. Then the question is whether the covenant of the plaintiff goes to the whole consideration of that which was to be done by the defendant. Now, the duke clearly covenanted to convey an estate to the defendant, in which all the timber growing on the estate was necessarily included. The timber was not disjoined from the estate by the separate valuation of it. It was expressly agreed that all trees, etc., which then were upon any of the estates should be valued. But it is not to be permitted to a party contracting to convey land, which includes the timber, by his own act to change the nature of it between the time of entering into the contract and that of performing it. There may be cases where the timber growing on an estate is the chief inducement to a purchase of that estate. But it is not necessary to inquire whether it be the chief inducement to a purchase or not, for, if it may be in any sort a consideration to the party purchasing to have the timber, the party selling ought not to be permitted to alter the estate by cutting down any of it. This is not an action of covenant, where one party has performed his part, but is brought for a penalty on the other party refusing to execute a contract. But, to entitle the party bringing the action to a penalty, he ought punctually, exactly, and literally to complete his part. We are therefore of opinion that the plea is a good bar to the action, and on this we give our judgment."

This case was decided in 1789. The question was

again raised in 1836, in the case of *Franklin* v. *Miller*, 4 Adol. & E. 599. The defendant, being indebted to divers persons, made an agreement to pay to the plaintiff the full amount of all accounts paid for the defendant by him, with the expense, and a salary of £40 per quarter until said debts should be fully settled. The plaintiff promised to perform such service, and expended time and money in so doing; and, payment being refused when due, he sued for a breach of contract. The defendant's plea alleged a failure to perform upon the part of plaintiff, in that he did not pay and settle all of the accounts that he might have done had he used diligence. Plaintiff replied, in substance, that the failure of defendant to pay justified his nonperformance and a rescission of the contract, and to this the defendant demurred. Littledale, J., said:

"With respect to the plea the plaintiff may say, 'Assuming that there has been a default made as to my part of the contract, it is only a partial breach, and the defendant's argument would go the length of insisting that, if I had in any one week omitted to pay the sovereign, he might put an end to the contract, and deprive me of all the money I have paid in advance; for he states that he has rescinded the agreement altogether.' It is a clearly recognized principle that, if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to."

This was based on *Boone* v. *Eyre*, which case the learned judge quoted at length, and he concluded with the statement that:

"So here it cannot be contended that, if in any one week the sovereign had been unpaid, that default would put an end to a contract made up of several stipulations, some of which have been executed."

Coleridge, J., said:

"I think both the replication and the plea bad. The plea is not good unless one party to a contract like this may treat it as rescinded if the other fails in the slightest degree to perform his part of it. The rule is that in

rescinding, as in making, a contract, both parties must concur. In *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, each load of straw was to be paid for on delivery. When the plaintiff said that he would not pay for the loads on delivery, that was a total failure, and the defendant was no longer bound to deliver. In such a case it may be taken that the party refusing has abandoned the contract. The present case is different, and the plaintiff is entitled to judgment."

In *Fillieul* v. *Armstrong*, 7 Adol. & E. 557 (decided in 1837), the defendant discharged one whom he had employed to teach French. In an action for breach of the contract, defendant pleaded that plaintiff was absent for two days beyond the time fixed by defendant for plaintiff's vacation. Upon demurrer to the plea the court held that, while the defendant might be entitled to sue the plaintiff for absenting himself, such absence did not put an end to the contract.

In *Freeman* v. *Taylor*, 8 Bing. 124 (decided in 1831), the plaintiff chartered to the defendant a ship to go from London to Madeira and Cape of Good Hope, and thence to Bombay and back. Action was brought for damages against the defendant for not loading the ship with a cargo at Bombay. Upon the trial it appeared that the captain made a deviation to the Island of Mauritius, and defendant's agents at Bombay, in consequence of such deviation, refused to find a cargo. It was left to the jury to say whether the deviation was of such a nature as to deprive defendant of the benefit of his contract, and this was held proper. See, also, *Mount* v. *Larkins*, 8 Bing. 108.

The case of *Freeth* v. *Burr*, L. R. 9 C. P. 208 (1874), was in some respects quite similar to the present case. Defendant contracted to sell 250 tons of pig iron at a fixed price, one-half to be delivered in two and the remainder in four weeks, payment net cash fourteen days after delivery of each parcel. The market was rising, and, notwithstanding urgent demands by plaintiffs, the delivery of the first 125 tons was not completed for nearly six months. The plaintiffs refused to pay for it, claiming a right to set

off the loss, but still urged the delivery of the remainder. The defendant treated the refusal to pay as a breach and abandonment of the contract, and declined to deliver more. It was held that the *mere* refusal to pay did not warrant defendant in treating the contract as abandoned. Coleridge, C. J., laid down the rule as follows:

"The question is whether the fact of the plaintiffs' refusal to pay for the 125 tons delivered was such a refusal on the part of the purchasers to comply with their part of the contract as to set the seller free, and to justify his refusal to continue to perform it. This certainly appears, viz., that there was an extension by mutual consent of the time for the delivery of the iron from December, 1871, to May, 1872, with constant pressure on the one side and excuses and resistance on the other. I mention that because it is important to express my view that in cases of this sort, where the question is whether the one party is set free by the action of the other, the real matter for consideration is whether the acts or conduct of the one do or do not amount to an intimation of an intention to abandon and altogether to refuse performance of the contract. I say this in order to explain the ground upon which I think the decisions in these cases must rest. There has been some conflict amongst them; but I think it may be taken that the fair result of them is as I have stated, viz., that the true question is whether the acts and conduct of the party evince an intention no longer to be bound by the contract. Now, nonpayment on the one hand, or nondelivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract, and set the other party free. That is the true principle on which *Hoare* v. *Rennie*, 5 Hurl. & N. 19, 29 Law J. Exch. 73, was decided,—whether rightly or not, upon the facts, I will not presume to say. Where, by the nondelivery of part of the thing contracted for, the whole object of the contract is frustrated, the party making default renounces on his part all the obligations of the contract. That is the ground upon which it is said in *Jonassohn* v. *Young*, 4 Best & S. 296, 32 Law J. Q. B. 385, that that case may be supported. In *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, there was an express refusal by the plaintiff to perform the contract; and Patteson, J., says: 'If the plaintiff had merely failed to pay for any particular load, that

of itself might not have been an excuse to the defendant for delivering no more straw; but *the plaintiff here expressly refuses to pay for the loads as delivered.* The defendant, therefore, is not liable for ceasing to perform his part of the contract.' Wightman, J., certainly, and Crompton, J., by inference, in *Jonassohn* v. *Young*, 4 Best & S. 299, both uphold that case upon the principle on which I rely. The principle to be applied in these cases is *whether the nondelivery or the nonpayment amounts to an abandonment of the contract, or a refusal to perform it*, on the part of the person so making default. That being so, and my Brother Brett having ruled that the mere nonpayment for the first portion of the iron contracted for, *unattended by any other act* on the part of the purchasers, did not put an end to the contract so as to disentitle the purchasers to maintain an action for the nondelivery of the second portion, but only gave the seller a remedy by cross action (of which he has availed himself), I am of opinion that his ruling was correct, and that the rule should be discharged."

Keating, J., concurring, said:

"It is not a mere refusal or omission of one of the contracting parties to do something which he ought to do that will justify the other in repudiating the contract, but there must be an absolute refusal to perform his part of the contract. Nonpayment is an element. But, looking at all the circumstances of this case,—a rising market, a failure on the part of the defendant to deliver the iron according to the terms of the contract, a series of deliveries in small quantities long after the times for delivery provided for by the contract, and a refusal on the part of the plaintiffs to pay for the iron delivered, not only accompanied by remonstrances, but with a requisition to the seller to fix a day for the delivery of a certain quantity,—I do not think they show an intention on the part of the plaintiffs to abandon the contract. As, upon the facts, there appears to have been not only no absolute refusal to perform the contract by the plaintiffs, and—what is important—no evidence of inability on their part to perform it, I think the defendant had no right to treat the contract as rescinded, and to refuse to deliver the remainder of the iron."

Denman, J., also said:

"I am of the same opinion. The learned judge ruled

that the mere refusal by the plaintiffs to pay for the portion of the iron delivered did not warrant the defendant in considering the contract as at an end; and he gave the defendant leave to move to enter a verdict or a nonsuit if the court should think that ruling wrong.   I am of opinion, upon the authority of *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, that the ruling was quite right.   That case did not decide expressly that a mere failure of a single payment might not be evidence of a refusal to perform the contract; but, in the words of Patteson, J., the conduct of the plaintiff, coupled with the nonpayment, amounted to an express refusal to perform the contract on his part.   There was nothing of the sort here.   After the way in which that case has been treated in subsequent authorities, I think we are bound to hold it to be a correct statement of the law, and to act upon it.   Notwithstanding the plaintiffs' refusal to pay, the defendant was bound to go on and deliver the rest of the iron."

The case of *Mersey Steel & Iron Co.* v. *Naylor*, 9 Q. B. Div. 648, 9 App. Cas. 434, decided in 1882 and 1884, contains extended discussion upon this subject by several eminent English judges.   The defendants agreed to purchase from the M. Co. a quantity of steel, to be delivered on board ship in five monthly installments, payment to be made within three days after receiving shipping documents.   The company delivered about half of the first installment, but, before payment became due, a petition was presented to wind up the company.   The defendants were erroneously advised that they could not safely pay the company without an order of court.   The company gave notice that it should treat the refusal to pay as releasing it from any further obligation.   No further iron was delivered, and an action was brought to recover the price of what had been delivered.   The defendants set up a counterclaim for damages for nondelivery. The court of queen's bench held, reversing Coleridge, C. J., that the defendants had not, by postponing payment under the erroneous advice of their solicitor, so shown an intention no longer to be bound by the contract as to release the plaintiffs from further performance of it, and

that the plaintiffs were liable for damages occasioned by the nondelivery.   Jessel, M. R., said:

"This appeal raises two points, one of which is of very great importance.   The first question is, What is the rule which is to prevail as regards the getting rid of the liability to the further performance, or to the performance, of a contract, in consequence of the acts or defaults of the other party in respect of that contract?   If one party breaks a contract, is the other party bound to perform his part of it or not?   There is no absolute rule which can be laid down in express terms as to whether a breach of contract on the one side has exonerated the other from performance of his part of the contract; but I think the rule of law is properly stated in *Freeth* v. *Burr*, L. R. 9 C. P. 208, and it is stated in a very few words by the judge from whose decision this appeal comes.   He says:

"'I say this in order to explain the ground upon which I think the decisions in these cases must rest.   There has been some conflict amongst them; but I think it may be taken that the fair result of them is as I have stated, namely, that the true question is whether the acts and conduct of the party evince *an intention no longer to be bound by the contract.*'

"That makes it a question of evidence.   You must consider the nature of the breach, the circumstances under which the breach occurred, and then see whether that is the result of it.   There may, indeed, be a case where one party says in so many words that he does not intend to go on with the contract; but generally you must infer the intention from the acts of the parties.   Then he goes on:

"'Now, nonpayment on the one hand, or nondelivery on the other, may amount to such an act, or may be evidence for a jury of an intention wholly to abandon the contract, and set the other party free.'

"If you have the act so done on the one side, the other party, if he elects to be free, is no longer liable to perform his part of the contract.   Now, in *Freeth* v. *Burr*, L. R. 9 C. P. 208, and the other cases on the subject, no such distinction is taken as is referred to by Lord Bramwell, if I rightly read his judgment, in *Honck* v. *Muller*, 7 Q. B. Div. 92, between the case of a contract partly performed and a contract never performed at all.   In *Freeth* v. *Burr* there had been part performance.   In the *Case of Phœnix Bessemer Steel Co.*, 4 Ch. Div. 108, the point

was not argued. That was an action founded on a contract for selling goods on credit. The vendors had said, ' We will not sell you the goods any more except for cash.' The other side said, ' But we are entitled to credit, and, if you will not sell them to us except for cash, we will not take them at all, and there shall be an end of it.' The only point argued was whether the persons who were entitled to the credit were insolvent in such a way and to such an extent that the vendors had a right to say, ' We will not sell except for cash.' That was the only point argued. Nobody argued that upon the refusal of the vendors to sell without cash, and when the answer is, ' We must decline to take the iron,' the vendors were released from the contract. I held that they were not when the case came originally before me at the rolls, and the court of appeal affirmed that decision. That was the case of a contract which had been part performed to a very considerable extent. So, again, in *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, the contract had been partly performed. The notion, therefore, that there is any difference in this respect between a contract part performed and a contract not performed at all, is not, I think, well founded. I am not sure that I am right in supposing that Lord Bramwell, in *Honck* v. *Muller*, 7 Q. B. Div. 92, intended to say that in no case where the contract was part performed could one party rely on the refusal of the other to go on, although that seems to me to be the fair construction of his judgment. Again, in *Simpson* v. *Crippin*, L. R. 8 Q. B. 14, no such distinction was taken. *Hoare* v. *Rennie*, 5 Hurl. & N. 19, was on demurrer, which the judges seem to have forgotten, and to have treated it as a special case, and drawn inferences of fact. That being so, the only point we have to consider is whether the evidence in this case ought to lead us to the conclusion that the buyers refused to go on with the contract."

Lindley, L. J., concurred, saying:

" The first question is whether the defendants are entitled, apart from any question of set-off, to any damages by reason of the breach by the plaintiffs of a contract on their part. Lord Coleridge held that they were not, on the ground that there had been such a refusal to perform the contract as to amount to a rescission of it. Whether there was such a refusal depends entirely on the correspondence. The view which the lord chief justice took of it is stated in these words:

" ' Here the defendants, while insisting on future deliveries, positively refused to pay for the iron already delivered, and for all which might subsequently be delivered, unless the plaintiffs fulfilled a condition which the defendants, in my opinion, had no right to impose.'

"Now, without pausing to remark on the terms in which that conclusion is expressed, I confess it appears to me that the correspondence does not bear that interpretation. The alleged refusal arose in this way: It appears that the advisers of the defendant company took a view which was untenable; that is to say, they took the view that the defendants could not properly pay certain money which they owed to the plaintiff company, by reason of the pendency of the petition to wind up the company. This view was taken under the impression that there was something in section 153 of the companies act of 1862 which rendered such a payment improper. It was overlooked that section 153 applies to dispositions by the company of its property, and not to payments to the company. The distinction is obvious, and not only obvious in the language of section 153, but there is a case — *In re Barned's Banking Co.*, (*Ex parte Contract Corp.*) L. R. 3 Ch. App. 105 — in which it was held by Lord Cairns that a transfer of shares to a company which was being wound up was not within section 153, and exposed the company to calls with respect to the shares. The advice, therefore, was mistaken advice. However, it was given, and the consequence of that advice was that the defendants declined or refused (I will use that word for the moment) to pay what they owed. But they did not so decline or refuse as to warrant the inference which, according to the case of *Freeth* v. *Burr*, L. R. 9 C. P. 208, is necessary to disentitle them from insisting on the contract,—the inference, I mean, that they abandoned the contract, or repudiated it, and would not go on with it. The inference is quite the other way. The true inference to be drawn from the correspondence is that they were ready enough to pay, but felt embarrassed, and did not know how to pay. Whether they ought to have been embarrassed is quite another matter. Acting honestly, and having got the advice which they did, they felt embarrassed, and hesitated about paying. It was not such a refusal to pay as brings the case at all within the principle of *Freeth* v. *Burr*, L. R. 9 C. P. 208.

"Now, I certainly do not pretend to reconcile all the cases on this subject. I have tried in vain to reconcile *Hoare* v. *Rennie*, 5 Hurl. & N. 19, *Simpson* v. *Crippin*, L. R. 8 Q. B. 14, and *Honck* v. *Muller*, 7 Q. B. Div. 92. I can understand each case by itself, but there is very considerable difficulty in reconciling them. It is not, however, necessary to do that. What we have to do is to extract from the cases some intelligible principle by which to be guided; and it appears to me that the principle is stated accurately in *Freeth* v. *Burr*, L. R. 9 C. P. 208, by Lord Coleridge himself, in delivering his judgment in that case. What he says as to the result of the cases is, 'The true question is whether the acts and conduct of the parties evince an intention no longer to be bound by the contract.' I think that is the fair way of testing each of these cases; and it appears to me that Lord Coleridge either lost sight of that in deciding this case, or drew an incorrect inference from the correspondence. Taking that as the true test, it appears to me that the true and fair construction of the important letters of the 10th of February, the 17th of February, and the 1st of March, is this: That the defendants refused, or declined, or hesitated to pay; not, as is stated in *Freeth* v. *Burr*, L. R. 9 C. P. 208, 'evincing an intention no longer to be bound by the contract,' but evincing a difficulty suggested to them by their solicitor; a difficulty which they did not see their way to get out of."

The comments of Lord Bowen are of especial interest with reference to the question of rescission, which is given prominence in some of the cases. He said:

"Nondelivery of a single parcel would not be necessarily, of course, sufficient to intimate that the person who does not deliver intends no longer to be bound; but I am far from saying that nondelivery of a single parcel might not in particular contracts, and under particular circumstances, be sufficient. So as to nonpayment. Nonpayment of itself is certainly not necessarily evidence of an intention no longer to be bound by the contract; but I do not say there might not be circumstances under which the court would be entitled to draw that inference from it. If Lord Bramwell, in *Honck* v. *Muller*, 7 Q. B. Div. 92, is to be understood as saying that the doctrine can no longer be applied when the contract has been part performed, it seems to me that his observation goes beyond what can be

supported; for, as the master of the rolls has pointed out, many of the cases where one party was allowed to treat the conduct of the other as putting an end to the contract were cases in which the contract had been part performed. A fallacy may possibly lurk in the use of the word 'rescission.' It is perfectly true that a contract, as it is made by the joint will of two parties, can only be rescinded by the joint will of the two parties; but we are dealing here, not with the right of one party to rescind the contract, but with his right to treat a wrongful repudiation of the contract by the other party as a complete renunciation of it. With regard to *Hoare* v. *Rennie*, 5 Hurl. & N. 19, I think that the true explanation of that case is that the plea was a special plea, which set out various facts from which two different inferences might quite well be drawn, and, as one or the other is drawn, the decision would appear correct or the reverse."

The case was affirmed in the house of lords. Lord Blackburn used the following language:

"As to the first point, I myself have no doubt that *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, correctly lays down the law to this extent: That, where there is a contract which is to be performed in future, if one of the parties has said to the other in effect, 'If you go on and perform your side of the contract I will not perform mine' (in *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, it was, 'You may bring your straw, but I will not pay you upon delivery as under the contract I ought to do; I will always keep one bundle of straw in hand so as to have a check upon you'), that, in effect, amounts to saying, 'I will not perform the contract.' In that case the other party may say: 'You have given me distinct notice that you will not perform the contract. I will not wait until you have broken it, but I will treat you as having put an end to the contract, and, if necessary, I will sue you for damages; but at all events I will not go on with the contract.' That was settled in *Hochster* v. *De La Tour*, 2 El. & Bl. 678, in the queen's bench, and has never been doubted since; because there is a breach of the contract, although the time indicated in the contract has not arrived. That is the law as laid down in *Withers* v. *Reynolds*, 2 Barn. & Adol. 882. That is, I will not say the only ground of defense, but a sufficient ground of defense. In *Freeth* v. *Burr*, L. R. 9 C. P. 208, it was also so laid down;

and Lord Coleridge here thinks the facts were such as to bring the case within that principle. I will not, at this time of the day, go through them; but, when the facts are looked at, it is to me clear that that is not so. So far from the respondents saying that, when the iron was brought in future, they would not pay for it, they were always anxious to get it, and for a very good reason,—that the price had risen high above the contract price. There was a statement that, for reasons which they thought sufficient, they were not willing to pay for the iron at present; and if that statement had been an absolute refusal to pay, saying, 'Because we have power to do wrong we will refuse to pay the money that we ought to pay,' I will not say that it might not have been evidence to go to the jury for them to say whether it would not amount to a refusal to go on with the contract in future, for a man might reasonably so consider it. But there is nothing of that kind here. It was a *bona fide* statement, and a very plausible statement. I will not say more. I refrain from weighing its value at this moment; but, as I said before, it prevents the case from coming within the authority of *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, and *Freeth* v. *Burr*, L. R. 9 C. P. 208; and consequently, as I understand it, Lord Coleridge made a mistake in the ground on which he went. The rule of law, as I always understood it, is that where there is a contract in which there are two parties, each side having to do something (it is so laid. down in the notes to *Pordage* v. *Cole*, 1 Saund. 548 [Ed. 1871] ), if you see that the failure to perform one part of it goes to the root of the contract,— goes to the foundation of the whole,—it is a good defense to say, 'I am not going on to perform my part of it when that which is the root of the whole, and the substantial consideration for my performance, is defeated by your misconduct.' "

Lord Bramwell said:

"My Lord Coleridge says that the defendants (the now respondents) positively refused to pay for the iron already delivered, and for all which might be subsequently delivered. Now, whether, if. they had positively refused to pay for that already delivered, it would have given any justification to the company or the liquidator for refusing to go on with the contract, it is not necessary for me to say at the present moment; I do not say that it would

not; but, if they had positively refused to pay for all which might be subsequently delivered, it would undoubtedly be an answer, upon the authority of *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, and the reasoning which you have heard.    But I really cannot, with great submission to the noble lord, find any evidence of that; and Mr. Cohen certainly did not attempt to prove it, but he set up a new ground, which was that the payment of the debt due was a condition precedent to the further performance of the agreement, with which I cannot at all agree."

The case of *Winchester* v. *Newton*, 2 Allen, 492, is in harmony with the English view.    The court said:

"It is true that the present plaintiffs denied their liability to make payment for any portion of the timber until the whole was delivered, treating the whole delivery as one entire contract.    In that they were wrong, and this court held them liable for the timber first delivered at the expiration of six months after its delivery.    But we think that act was not, under the circumstances, a repudiation of the contract for future delivery, or to operate to excuse the defendant from the performance of his further contract to deliver timber by the 1st of April, 1859.    The contract had been substantially divided, the new stipulation postponing both delivery and payment, as to all embraced within it, an entire year beyond the time applicable in both these respects to the delivery of the first parcel.    In regard to each portion a distinct liability attached to the parties, and this was not discharged by the plaintiffs' refusal to pay for the first portion, under the circumstances stated.    The case of *Withers* v. *Reynolds*, 2 Barn. & Adol. 882, is much relied upon on the part of the defendant.    That case, upon a careful scrutiny, will be found to have been put upon the ground of something more than a mere refusal to pay for articles already delivered.    It was considered by the court as a prospective refusal, and *applicable to articles yet to be delivered* upon the contract.    But in the present case the plaintiffs did not, in their refusal to pay for the first parcel of timber upon the ground that the day of payment therefor had not arrived, deny their liability, or affirm their purpose not to pay promptly, and fulfill to the letter their promise to pay for the timber to be delivered under the extended contract.    As to that payment they took the same view as the other party.    Both held that for the timber yet to be delivered

125 MICH.—11.

payment was to be made in six months after its delivery. The denial of payment for the timber delivered prior to the 1st of April, 1858, was a denial based upon the legal effect of the contract, the vendee alleging that it postponed the entire payment. This refusal to pay for the timber that had been delivered on the 1st of October, 1858, did not operate to discharge the other party from his promise to deliver timber on the 1st of April, 1859."

The supreme court of New Jersey takes the same view of this question. *Trotter* v. *Heckscher*, 40 N. J. Eq. 612 (4 Atl. 83); *Blackburn* v. *Reilly*, 47 N. J. Law, 290 (1 Atl. 27, 54 Am. Rep. 159). In the latter case the English and American authorities were considered, and the rule adopted in the *Mersey Case* was approved. The court said:

"The rule to be applied in determining whether the express obligations of such contracts remain after one or more breaches by either party has been the subject of much discussion of late years, and has given rise to some contrariety of judicial opinion. We do not feel constrained, by the phases of the present case, to enter at any length upon the details of this discussion. In our opinion, the rule established in England by the judgment of the house of lords in *Mersey Steel & Iron Co.* v. *Naylor*, 9 App. Cas. 434, affirming the judgment of the court of appeal in 9 Q. B. Div. 648, is one which, in ordinary contracts of this nature, will work out results most conformable to reason and justice. The rule is that defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other deliveries or payments stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract, or a design no longer to be bound by its terms. This rule leaves the party complaining of a breach to recover damages for his injury on the normal principle of compensation, without allowing him the abnormal advantage that might inure to him from an option to rescind the bargain. It also accords with the ancient doctrine laid down by Serjeant Williams in his notes to *Pordage* v. *Cole*, 1 Saund. 320b [Ed. 1846], that where a covenant (of the plaintiff) goes only to part of the consideration on both sides, and a breach of such covenant may be paid for in damages, it is an independent

covenant, and an action may be maintained for a breach of the contract on the part of the defendant without averring performance in the declaration. It, of course, is inapplicable where the parties have expressed their intention to make performance of a stipulation touching a part of the bargain a condition precedent to the continuing obligation of the contract; and peculiar cases might arise where the courts would infer such an intention from the nature and circumstances of the bargain itself,— cases in which the courts would see that the partial stipulation was so important, so went to the root of the matter (to use a phrase of Blackburn, J., in *Poussard* v. *Spiers*, 1 Q. B. Div. 410), as to make its performance a condition of the obligation to proceed in the contract."

In New York the question was considered in the case of *Cahen* v. *Platt*, 69 N. Y. 348 (25 Am. Rep. 203), and it was held that a delivery of one invoice of glass that was inferior to that contracted for did not justify the purchaser in refusing to take subsequent consignments of glass corresponding with the requirements of the contract. See, also, *Ebling* v. *Bauer*, 17 N. Y. Wkly. Dig. 497; *Selby* v. *Hutchinson*, 9 Ill. 319; *Bloomington Electric-Light Co.* v. *Radbourn*, 56 Ill. App. 165; *Gatlin* v. *Wilcox*, 26 Ark. 309.

The case of *Myer* v. *Wheeler*, 65 Iowa, 390 (21 N. W. 692), is closely analogous to the present case. Plaintiffs sold defendants 10 car loads of barley. Defendants were to pay 70 cents per bushel for each car load, when delivered. On receipt of the first car load the defendants refused to pay upon the ground that the barley was not equal to the sample, but stated that they had given plaintiffs credit for 65 cents per bushel, and would withhold payment until the 10 car loads were delivered, and urged shipment of the remainder. It was held that this did not entitle plaintiffs to rescind the contract, and that they were liable for damages resulting from nondelivery of the remainder. See, also, *Burge* v. *Railroad Co.*, 32 Iowa, 101.

A valuable note upon this subject will be found in *Lake Shore, etc., R. Co.* v. *Richards*, 30 L. R. A. 33 (s. c.,

152 Ill. 59, 38 N. E. 773 ). The authorities are reviewed
in *Norrington* v. *Wright*, 115 U. S. 188 (6 Sup. Ct. 12 ),
though the exact question before us was not involved.
An interesting note upon that case at circuit will be found
in 21 Am. Law Reg. (N. S.) 395 (*s. c.*, 5 Fed. 768 ),
where the authorities, English and American, are col-
lected. In 2 Benj. Sales (4th Ed.), § 909, the author
says, that:

"In America the law appears to be fairly settled in
accordance with the decision in *Simpson* v. *Crippin*, L.
R. 8 Q. B. 14, viz., that, in the absence of any expressed
intention of the parties, a contract for the sale of goods by
successive deliveries is severable, and the failure to accept
or deliver one installment does not entitle the other party
to refuse delivery or acceptance of the installments that
remain. Only one case—*King Philip Mills* v. *Slater*,
12 R. I. 82 ( 34 Am. Rep. 603 )—has been found in which
the rule laid down in *Simpson* v. *Crippin* is directly
attacked."

The editor of American Notes to the fourth edition takes
issue with Mr. Benjamin, but we think his views are not
as well supported by the authorities as the review of *Nor-
rington* v. *Wright*, by Mr. Landreth.

See, also, Clark, Cont. 652 *et seq.; Lee* v. *Saddlery
Co.*, 38 Mo. App. 201; and 1 Beach, Cont. §§ 122, 123,
849, and notes.

It is urged that the following cases show that a different
rule prevails in Michigan: *Grand Rapids, etc., R. Co.*
v. *Van Deusen*, 29 Mich. 444; *Hubbardston Lumber Co.*
v. *Bates*, 31 Mich. 168; *Stahelin* v. *Sowle*, 87 Mich. 135
(49 N. W. 529); *Scheible* v. *Klein*, 89 Mich. 385 (50 N.
W. 857). An examination of these cases will show that
they are distinguishable.

The case of *Grand Rapids, etc., R. Co.* v. *Van Deusen*
contains a *dictum* that *repeated failures* to pay estimates
on railroad grading would have justified the plaintiff in
quitting work and claiming damages. He did not quit,
but performed his contract, and claimed damages for
increased cost, occasioned by defendant's failure to pay;

but the court held that he was entitled to interest only, which was the measure of damages, regardless of the actual injury. The case holds simply that a failure to pay estimates is a departure from the terms of the contract, for which interest may be recovered. But in such a case the *dictum* may have been correct upon the ground that it was a departure from the contract in such a substantial particular as to excuse nonperformance by the other party of a contract that could not be called severable.

*Hubbardston Lumber Co.* v. *Bates*, 31 Mich. 168, is not in any way decisive of this question.

The case of *Stahelin* v. *Sowle*, 87 Mich. 124 (49 N. W. 529), is more nearly in point. It arose out of a contract to furnish ties. The plaintiff agreed to move his sawmill, and cut logs for the defendant only. It was claimed by the defendant that the failure of the plaintiff to perform work contracted for made it necessary for him to get his ties cut at another mill in order to meet his engagements, and excused him from performing his contract. The court held that this raised a question for the jury, and said:

"Where one party has departed from a special contract for the delivery of specific articles from each to the other, the other party may treat it as rescinded; and if, by the terms of the contract, concurrent acts are to be performed, —as the delivery of property by one party and the payment of price by the other,—if either party should refuse to perform his part of the contract, the other may treat the contract as abandoned, and justify rescission under it."

That was not an instance where the case turned upon a provision which "made concurrent the delivery of property and payment of the price," though it did involve mutual acts, the nonperformance of which might excuse a departure from the contract. Manifestly, if a person contracted to deliver a horse to another, for which he was to receive a price upon delivery, he would be justified in withholding delivery if the other refused to pay the price;

and, on the other hand, the purchaser need not pay the price if the seller refused to deliver the horse. Either refusal would go to the whole contract. That is the most that can be made of the text in that case. The cases hereinbefore cited distinguished between such cases and others involving delivery and payment by installment, and they illustrate the possible hardship of the application of so rigid a rule, and relieve against it. At the same time they hedge about the immunity of the nonperforming party by conditions and limitations that amply protect the other. The questions of solvency and intention enter into the case, and a jury passes upon them.

For reasons that will be obvious to the reader, the case of *Scheible* v. *Klein*, 89 Mich. 385 (50 N. W. 857), is not controlling here.

Counsel for the defendant cites a number of cases,[1] most of which can be distinguished from the present case, though it is true that some of them are very similar. We do not discover that the question before us has been passed upon by this court, and it is unnecessary to discuss the other cases cited. The subject was referred to in the cases of *McGregor* v. *Ross' Estate*, 96 Mich. 108 (55 N. W. 658); *Robinson* v. *Railway Co.*, 103 Mich. 607 (61 N. W. 1014); and *Eakright* v. *Torrent*, 105 Mich. 294 (63 N. W. 293).

In some of the cases discussed herein it is said that there may be a question for the jury; *i. e.*, whether there was an intention to abandon or not perform the contract. In this case, however, there is nothing to indicate such an intention. The plaintiffs insisted upon the delivery of the wood, and it does not even appear that they did not intend

---

[1] Among the cases so cited were the following: *Hall* v. *Rupley*, 10 Pa. St. 231; *Robson* v. *Bohn*, 27 Minn. 333 (7 N. W. 357); *Palmer* v. *Breen*, 34 Minn. 39 (24 N. W. 322); *Doughten* v. *Building & Loan Ass'n*, 41 N. J. Eq. 556 (7 Atl. 479); *Fletcher* v. *Cole*, 23 Vt. 114; *Shirley* v. *Shirley*, 7 Blackf. 452; *Cromwell* v. *Wilkinson*, 18 Ind. 365; *Hawley* v. *Smith*, 45 Ind. 183; *Ward* v. *Kadel*, 38 Ark. 174; *Chapin* v. *Norton*, 6 McLean, 500; *Shaffner* v. *Killian*, 7 Ill. App. 620; *Bannister* v. *Read*, 6 Ill. 92; *Carney* v. *Newberry*, 24 Ill. 203; *Graham* v. *Holloway*, 44 Ill. 385; *Graves* v. *White*, 87 N. Y. 463; *School District* v. *Hayne*, 46 Wis. 511 (1 N. W. 170).

to pay for every succeeding car that the defendant might deliver. We think, therefore, that the learned circuit judge did not err in holding that the plaintiffs had established a right to recover.

The judgment is affirmed.

The other Justices concurred.