Merrimack, }
Sept. 4, 1906. }

## CONCORD v. MORGAN.

A permanent structure located in a wood-yard, adapted to the peculiar requirements of the business, and used by the owner for storing the commodity in which he deals and the machinery employed in its preparation. for market, is a "building" within the meaning of an ordinance regulating the use of steam engines in "any building" in a fire precinct.

PETITION, for an injunction. Transferred without a ruling from the April term, 1906, of the superior court by *Peaslee*, J.

The defendant is using an engine in a structure in the fire precinct of Concord, without the written permission of the city engineer and the chief of the fire department. The structure is sixty feet long and thirty feet wide, and consists of a gable roof made of boards and roofing paper and supported by three rows of posts, the outside rows being nine feet high and the middle row twelve feet high. About three fourths of one side of the structure is covered with boards separated by open spaces, the upper edge of the topmost board being some five feet from the ground. The other side is at times closed with piles of wood. Otherwise, the sides and ends of the structure are open. The structure is located in the defendant's wood-yard, and he uses it in connection with his business. If it is a "building," within the meaning of the city ordinance "relating to the building and fire precinct," an injunction is to issue; if not, the petition is to be dismissed.

*Edmund S. Cook*, for the plaintiffs.

*Taggart, Tuttle, Burroughs & Wyman*, for the defendant.

YOUNG, J. The only question transferred is whether the defendant's wood-shed is a "building," within the meaning of an ordinance which provides that "no person shall . . . use any . . . engine in any building [in the fire precinct] without the written consent of the city engineer and the chief of the fire department." Whether or not it is a "building" within the meaning of this ordinance depends on whether the city councils intended to include such structures within its operation. The only evidence in the case relevant to that issue is the language they used and the purpose they had in view when they enacted the ordinance. The language they used to describe the structure to which the ordinance is intended to apply is "any building" in the fire precinct.

Does the word "building" include such structures as the defendant's if it is given its ordinary meaning? Although all structures are not "buildings" within the common acceptation of that term (*Truesdell* v. *Gay*, 13 Gray 311; *Coddington* v. *Dry Dock Co.*, 31 N. J. Law 477; *LaCrosse etc. R. R.* v. *Vanderpool*, 11 Wis. 119), all permanent structures intended to shelter human beings or domestic animals, or to receive, retain, or confine the goods in which a person deals, or to house the tools or machinery he uses or the persons he employs in his business, are commonly called "buildings." *State* v. *Garity*, 46 N. H. 61; *Smart* v. *Hart*, 75 Wis. 471; *Watson* v. *Cotton*, 5 C. B. 51; *Powell* v. *Farmer*, 18 C. B. N. S. 168.

The structure in which the defendant is using his engine is permanent. The roof and the wood stored under it furnish the protection he needs in order to operate his engine and to prepare his wood for market. It is constructed as it is, partly to enable him to unload wood in all parts of it from his wagons and to load it on them again when it is sold, and in part because wood seasons more quickly and thoroughly in such structures than when stored in buildings constructed in the ordinary way. In other words, it is a permanent structure adapted to the peculiar requirements of his business, and used by him to store the goods in which he deals and the machinery and men he employs in his business. Consequently, it is a "building" within the ordinary meaning of that word.

Since this is so, the natural inference to be drawn from the words the city councils used to describe the structure in which all persons are forbidden to use engines in the compact parts of the city, without the written consent of the city engineer and the chief of the fire department, is that such structures as that in which the defendant is using his engine are "buildings" within the meaning of the ordinance; for there is a presumption that persons intend to give the words they use their common meaning, and this presumption obtains in the construction of city ordinances as well as all other written instruments. The defendant's structure therefore is a "building" within the meaning of the ordinance, unless the purpose of the ordinance shows that the city councils could not have intended to include such structures within its operation; or, in other words, unless such structures are not likely to cause the public danger at which the ordinance is aimed.

It is obvious that the public danger the ordinance is intended to remove is the risk of fire to surrounding buildings, incident to using an engine in any structure in the compact part of the city without doing what experience has shown should be done to render its use reasonably safe,—that is, without taking such precau-

tions in installing it as make it improbable that the engine will
communicate fire to the structure in which it is used or to the
surrounding structures.    In other words, the ordinance is intended
to regulate—not to prevent—the use of engines within the fire
precinct.    Consequently, a person has a legal right to use one in
any structure in any part of the city when he has done all that is
necessary to enable him to use his engine without unreasonably
increasing the fire risk to the surrounding property.    Therefore,
when a person applies to the city engineer and the chief of the
fire department for permission to use an engine, the question for
them to consider is whether he has done what the ordinary man,
acquainted with the use of engines in the compact part of a city,
would do to protect, not his own, but the surrounding property
from the risk of fire, and not the character of the building in which
he proposes to use it or the business in which he is engaged. Since
the ordinance is intended to prevent the increase in the risk of
fire to surrounding structures, incident to using improperly installed
engines in the compact parts of the city, and not the risk incident
to using them in any particular class or kind of structure, nor the
risk to the structures in which they are used, it is obvious that the
purpose the ordinance is intended to accomplish has no tendency
to prove that the structure in which the defendant is using his
engine is not a "building" within the meaning of the ordinance.
So if it were conceded that the purpose of the ordinance has no
tendency to show that it is a "building," the ordinance would still
be construed to include such structures; for, as has been seen, all
the other evidence there is on that question is the language of the
ordinance, and that tends to this conclusion.

But it cannot be conceded that the purpose of the ordinance has
no tendency to show that such structures are "buildings" within
its meaning.    The city councils were attempting to reduce the fire
risk peculiar to surrounding structures on account of the use of
improperly installed engines in the compact parts of the city.    It
cannot be assumed, in the absence of evidence, that they intended
to exempt the owners of a particular class of structures from tak-
ing the precautions they compel the owners of all other classes of
structures to take, in order that their engines may not communi-
cate fire, either mediately or immediately, to surrounding struc-
tures.    On the contrary, the fact the city councils were attempt-
ing to prevent such increase in the fire risk tends to prove that
they intended to forbid the use of engines in all structures in
which they can be installed in a way to increase that risk.    When
the legislature undertakes to protect the public from a threatened
danger, there is a presumption that the act forbids everything
fairly within its terms which has any tendency to promote the evil

at which it is aimed. In this case there is nothing to rebut that presumption; and the only inference that can be drawn from the purpose the ordinance was intended to accomplish is that the structure in which the defendant is using his engine is a " building." As has been seen, the public evil the ordinance is intended to correct is not the risk of fire peculiar to using an engine in any particular kind or class of buildings, or that to the building in which it is used, but that to surrounding structures because of the use of an engine in any building in the compact parts of the city, without doing what should be done in that particular case to prevent the communication of fire to the surrounding structures.

The roof that covers the defendant's engine is made of boards, and the fire-walls, so far as there are any to protect the surrounding property from a fire that originates in the engine-room, are composed of boards and piles of wood. It is obvious that an engine installed under such conditions would be likely to increase the risk the ordinance is intended to remove. Since this is so, both the language of the ordinance and the purpose it was intended to accomplish tend to prove that the defendant's wood-shed is a " building " within its meaning; consequently the injunction must issue in accordance with the agreement of the parties.

*Case discharged.*

All concurred.