

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4076
Re: Whether or not certain
materials are "building
materials" within the mean-
ing of the Chain Store Tax
Law (Article 1111d, V.A.P.C.)
exempting "wholesale and/or
retail lumber and building
material businesses engaged
exclusively in the sale of
lumber and building material."

        This is in reply to your letter asking whether or
not certain materials described by you are "building materials"
within the meaning of the Texas Chain Store Tax Law.  Your let-
ter reads as follows:

        "Representatives of a large group of lumber
    yard operators have asked us whether or not the
    list of materials hereinafter listed, and sold
    in said lumber yards in addition to lumber, are
    'building materials' within the meaning of the
    proviso in the Texas Chain Store Tax Law (Arti-
    cle 1111d, Vernon's Annotated Penal Code,) which
    says:

        "'Provided that the terms, "stores,
    mercantile establishment or mercantile establish-
    ments" wherever used in this Act shall not in-
    clude; wholesale and/or retail lumber and build-
    ing material businesses engaged exclusively in
    the sale of lumber and building material; ....'

        "The lumber yards are contending that the
    sale of the following material, when sold at lum-
    ber yards, will not make them subject to the
    store tax.

Honorable George H. Sheppard, page 2

"1. COOLING SYSTEMS:

1-A. COOLING SYSTEM WITH FAN. Representative materials carried:

(a) Grille, which replaces section of ceiling in building. A Grille is usually constructed of wooden slate with outside wooden frame and sometimes metal is used. Grilles are constructed on job by carpenters, also carried in stock.

(b) Pulpboard (such as Masonite) and Lumber for construction of airtight wind tunnel. One end of this tunnel is connected with grille. The wind tunnel is constructed on the job and is located in the attic of the building.

(c) A special suction type of electric fan designed for this particular use is built into the other end of the tunnel.

(d) Louvres or Windows are used to permit air to pass out of building. Louvres are built into the gables of buildings.

(e) Wire, Conduit (either paper or flexible) and Switch are built into wall and ceiling for starting and stopping operation.

All of the above materials are built into and become a part of the structure.

1-B. OTHER COOLING SYSTEMS. Representative materials carried:

Galvanized flat sheets, solder, insulation board, such as Masonite or Celotex, and asbestos paper for the construction of ducts which are built into walls and ceilings. Also grilles, pipe and pipe

fittings. All of which materials can be used in construction of Other Cooling Systems. All of the above materials are built into and become a part of the structure.

"2. HEATING SYSTEMS:

2-A. HEATING SYSTEM WITH GAS FLOOR FURNACE. Representative materials carried:

Metal grille replacing section of floor. Special type of gas burner connected beneath level of floor. Said burner is not useful for any other purpose. Bolts and screws for construction of system. Galvanized Iron shield constructed around Gas Burner. Ducts, either metal or asbestos, constructed to lead from burner to flue or to ventilating pipe where no flue available. Thermostat, pipe and pipe fittings used therewith. The above materials are used in constructing on the job as a part of the structure of a heating system with gas floor furnace.

2-B. WALL HEATING SYSTEM WITH GAS BURNER. Representative materials carried:

Unfinished Wood cuff or frame to be built in between studding or into opening. Gas burner. Pipe and pipe fittings. All of the foregoing materials to be built into and become a part of the structure.

"3. EXHAUST FANS (Kitchen):

3-A. FOR HOODS. Representative materials carried:

Wood framing with Galvanized flat sheets, shaped to desired form; also constructed and attached to flue or other ventilated pipe or duct opening. Special type of

Honorable George H. Sheppard, page 4

small electric exhaust fan is built into hood to force fumes through flue or ventilated pipe or duct.

3-B. FOR ROOMS. Representative materials carried:

Wood or metal frames to be built into opening in outside wall. Metal for shields constructed above opening to protect from weather. Screen wire to cover opening. Special type of electric exhaust fan built into frame.

"4. VENTILATORS:

4-A. VENTILATORS IN FOUNDATION AND BELOW FIRST FLOOR LINE.

The purpose of this type of Ventilator is to permit a circulation of air beneath the floor of the structure to prevent decay, deterioration and rot of structural materials, including floors, beneath the first floor level, and furthermore to prevent destruction of such materials by termites. Said Ventilators are now being required as part of house construction by F.H.A. These Ventilators replace a section of the lower walls of the structure and are built into the building. Representative materials carried: Metal Lath, Hardware cloth, Poultry Wire, Heavy Woven Wire, Wooden strips and metal, cement or wood grille, together with lumber used for building frame around opening.

4-B. VENTILATORS IN STRUCTURE TO DISCHARGE FUMES, ODOR AND SEWER GAS.

Building Codes in Cities require, and good building practices recognize, that each sewer connection in a building shall be ventilated. Representative materials carried: Pipe of various kinds, pipe

Honorable George H. Sheppard, page 5

fittings, Galvanized Iron flat sheets for construction of metal ducts, Wood and Metal Grilles, lead and oakum for connecting pipe, Lumber for framing Grille openings. These Ventilators are constructed in Walls, Floors and Ceilings and extend through roof. They become a part of the structure.

4-C. VENTILATORS IN ROOF CONSTRUCTION.

The purpose of these Ventilators is to discharge hot air which develops in attic and roof of buildings. Many types of ventilators are used for this purpose depending upon character of roof construction.

(a) Louvres, which are used in gables. This Ventilator is of wood slat construction with slats placed on steep pitch to prevent rain and snow from entering. Representative materials carried: Lumber Galvanized metal and screen wire. Usually constructed on job, but small sizes also carried in stock. In all instances Louvres replace sections of walls and become a permanent part of the structure.

(b) Grilles, which are used in Cornice. In cornice construction where roof projects beyond line of wall, ventilators in the form of grilles replace sections of cornice and are built into and become a part of the structure. Representative materials are the same as mentioned in the next preceding paragraph in connection with Louvres. The grille ventilator in cornice serves the same purpose as the Louvre.

(c) Metal Ventilators for Roof Construction which will not permit use of Louvres or grilles. The purpose is to discharge hot air from roof. Representative material

Honorable George H. Sheppard, page 6

carried: Galvanized metal, screws and solder. This type of ventilator constructed on order for special types of roof; also common designs and sizes carried in stock. Use of this type of ventilator for certain types of roof eliminates necessity of building penthouse on roof to obtain ventilation. In all instances these ventilators replace section of roof and become part of structure.

"5. ELECTRICAL FIXTURES:

5-A. ELECTRIC WIRING AND CONDUIT. This refers to the materials used in the construction of the building so as to provide for current from point where same connects with the structure to and including the outlet in the structure. Representative material carried: Tubes to insulate through joists; Wire, Knobs, Screws, Metal pipe for conduit. Lead covered cable for conduit and Flexible Cable for conduit; Base, Floor, Wall and Ceiling Metal Outlets, boxes or receptacles; panel boards and switches. All of the above materials are built into and become a part of the structure.

5-B. ELECTRICAL LIGHTING FIXTURES forming an integral part of the structure and becoming a part of the building or structure. Such fixtures do not include Electric Fixtures which are made use of by plugging into outlet or receptacle and do not include light bulbs. These fixtures are connected directly with the wiring system of the structure. Representative materials carried: Metal, Glass, Porcelain, Wire and Switches. Such Fixtures are carried in stock, but in all cases form a part of the construction and require labor for assembly and for making a part of the structure. During recent years Electric Lighting Fixtures are being built into walls in order to obtain indirect lighting and furthermore to create a type of construction where

Honorable George H. Sheppard, page 7

fixtures are invisible. These Fixtures
have no use except as Building Materials
and they form an important part of the
structure.

"6. GAS FIXTURES FORMING AN INTEGRAL PART OF THE
STRUCTURE:

6-A. GAS PIPING AND FITTINGS.

This refers to the materials used in the
construction of the building so as to pro-
vide flow of gas from point where same
connects with structure to and including
outlet or cock in the structure. These
materials consist of pipe and pipe fittings.
It is usual for said materials to be con-
structed in walls and between ceilings and
floors of the structure.

"7. PLUMBING.

7-A. PIPE AND FITTINGS.

These materials include Sewer, Vent, Water
and Gas pipe (Clay and Metal): together
with fittings. All of these materials are
built into and become a part of the build-
ing or structure. It is usual for said
materials to be constructed in walls and
between ceilings and floors of the struc-
ture.

7-B. PLUMBING FIXTURES.

Bath Room Plumbing Fixtures built into and
becoming a part of the Building or Struc-
ture. These 'materials include Bath Tubs,
Shower Baths, Lavatories and Commodes, all
of which are directly connected with Sewer-
age System, Water System and Vents in a
permanent manner. Bath Tubs are usually
built into walls and floor of bath room
with tile or other wall or floor finish-
ing material resting on top edge of Bath
Tub and against sides of Bath Tub. Shower
Baths are usually built into structure by

building three walls; said walls finished on interior with tile or other suitable material and with drain built into floor, and with door, hinges and bolts. Lavatories are of two types, wall and floor. Wall lavatories are usually constructed by being permanently fastened to wall with tile or other finishing wall material extending around edge of Lavatory. Floor Lavatories are usually constructed by being set on concrete part of floor with tile extending around edge of base. Commodes are usually constructed by being bolted into floor with water tank bolted into walls. The above fixtures are carried in stock, but are of no practical use except as building materials forming a part of the structure and as mentioned are all directly connected and tied in with papes and fittings to the sewerage system, water system and vents. The construction of the above materials into the building or structure forms a substantial part of the labor necessary in the erection of the structure.

7-C. HOT WATER HEATING SYSTEM.

The materials consist of steel reservoir or container permanently connected with the water system of the structure and forms an integral part of the completed Hot Water System for the building or structure and furthermore connected with Gas System and Vent. Other materials are pipe and pipe fittings.

7-D. KITCHEN SINKS.

These materials consist of metal sinks which are permanently connected and built into the building or structure, being bolted into wall or into drain board construction. Also directly connected with sewerage system, water system and vent. Other materials are pipe and pipe fittings.

Honorable George H. Sheppard, page 9

7-E. SEPTIC TANKS.

Septic Tanks are used where other sewer-
age disposal not available. Constructed
by using cement and reinforcing for con-
crete type or by using clay tile materials.
Said tanks are connected with building with
sewer tile. The materials are carried in
stock. A substantial amount of labor is
necessary in the construction of the mater-
ials into a septic tank.

"8. CARPENTER'S TOOLS.

These materials consist of certain tools
used by the mechanic in the construction
of the building or structure and are ab-
solutely essential to the use of the mater-
ials which go into and become a part of the
building. Throughout the history of the
Building Industry, hardware has been divid-
ed into two classes, viz: Builders Hard-
ware and Shelf Hardware. Builders hard-
ware includes Carpenters tools and carried
in Building Material stocks.

"9. PAINT BRUSHES.

These materials are essential to the use
of paint, one of the important building
materials. Paint brushes constitute a
class of material which is consumed in the
construction of the building or structure
where paint is used. Usually a number of
paint brushes are consumed in the comple-
tion of one structure or building. Paint
Brushes have been carried in stock and
sold almost exclusively by Building Mater-
ial Dealers.

"10. SAND PAPER.

This material is essential in the construc-
tion of a Building or structure, parti-
cularly in the finishing of certain sur-
faces of lumber and is consumed in construc-
tion. It is essential in completing the

processing of lumber where a smooth sur-
face is necessary and the consumption is
very rapid. Sand Paper has been carried
in stock and sold almost exclusively by
Building Material Dealers throughout the
life of the industry.

"11. BARBED WIRE, WOVEN WIRE OF ALL KINDS, STEEL
FENCE POSTS AND METAL GATES.

These materials are all used in the build-
ing of Fence Structures. Building material
dealers have handled materials for building
either wire or wooden fences throughout the
history of the industry.

Light Woven Wire is also used in the con-
struction of walls of poultry buildings
and in stucco wall construction for a cer-
tain type of building and as Ventilators
in walls and cornices of buildings.

Heavy Woven Wire is also used as reinforc-
ing in concrete construction and as Venti-
lation material in walls and cornices of
buildings. Also used in stucco and plas-
ter wall construction.

"12. METAL TANK MATERIALS.

These materials consist of flat steel sheets,
either galvanized or black; also corrugat-
ed sheets. These materials as carried in
stock are not formed or shaped for tank
construction. Said materials are used in
the building of stock tanks and out-side
water supplymtanks.

"13. WINDMILL PARTS

Representative Materials carried: Steel
angle and flat irons, bolts and nuts for
use in construction of tower; also lumber
for tower construction. Windmill gears,
Windmill tails, steel fan sections for Wind-

Honorable George H. Sheppard, page 11

> mill, pipe and fittings, sucker rods,
> couplings, cylinder barrels, valves and
> washers. All of the above materials are
> used to construct the completed struc-
> ture and to become part of water system.
> A great number of houses are not connect-
> ed to a municipal water system, and water
> for said houses is obtained from a water
> system in which the water is pumped by a
> windmill.

"14. PUMP PARTS.

> Representative materials consist of pipe,
> pipe fittings, cylinder barrels, valves
> and washers used for constructing pump.

"This department will appreciate your opinion
as to whether a lumber yard selling the items of
material listed above, brings such lumber yard
within the definition of a store under the Chain
Store Tax Act."

The Texas Chain Store Tax Law is dodified as Article
1111d of Vernon's Annotated Penal Code. Said law provides that
every person or firm operating a store shall pay a fee for the
privilege of doing so, and a graduated scale of fees is prescrib-
ed, the amount of the fee for each store depending on the total
number of stores operated by said person or firm. A store is de-
fined in Section 7 of the law as follows:

> "Sec. 7. The term 'store' as used in this Act
> shall be construed to mean and include any store or
> stores or any mercantile establishment or estab-
> lishments not specifically exempted within this Act
> which are owned, operated, maintained, or controlled
> by the same person, agent, receiver, trustee, firm,
> corporation, copartnership or association, either
> domestic or foreign, in which goods, wares or mer-
> chandise of any kind are sold, at retail or whole-
> sale."

Several exemptions are set out in Section 5 of the law, one of
them being as follows:

> ". . . Provided that the terms, 'store,
> stores, mercantile establishment or mercantile

Honorable George H. Sheppard, page 12

establishments' wherever used in this act shall not
include: wholesale and/or retail lumber and build-
ing material businesses engaged exclusively in the
sale of lumber and building material; . . ."

We think that by using the word "exclusively" in said
exemption the Legislature intended that those "wholesale and/or
retail lumber and building material businesses" that engage only
in the selling of lumber and "building material" should come
within the exemption. In construing one of the other exemptions
in the Chain Store Tax Law the court in the case of Standard Oil
Company of Texas v. State, 142 SW. (2d) 519, said:

"We are of the opinion that when the legisla-
ture used the language in the exemption clause 'en-
gaged exclusively in . . . selling . . . petroleum
products' the word 'exclusively' was used synony-
mously with 'only' and 'purely.'"

Therefore, if any of the materials listed in your letter are not
"building material" in the sense that said term is used in the
statute, and said material is sold in a lumber or building mater-
ial business establishment, or in any other mercantile establish-
ment or store, said establishment or store would be subject to
the chain store tax.

We will endeavor to decide in the case of each of these
materials whether or not it is a "building material."

Before deciding each question we will discuss generally
the meaning of the term "building material." There being no stat-
utory definition of said term, we are relegated to the lexico-
graphers, legal and otherwise.

The word "building" in this statute is used as an ad-
jective modifying the noun "material;" but the adjective "build-
ing" comes from the noun "building." "The word 'building' is
derived from the Anglo-Saxon 'bold,' meaning a dwelling." Sauls-
berry v. North American Refractories Co., 278 Ky. 808, 129 S.W.
(2d) 525; Neekamp v. Huntington Chamber of Commerce, 99 W. Va. 388,
129 S. E. 314. Definitions of the word "building," both noun and
adjective, are of value to us in determining the meaning of the
word in this case.

The word "material" in this statute is clearly a noun.

Webster's New International Dictionary, 2nd Ed., Unabridged, defined the word "building" as follows:

"That which is built, specif.: As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose. Building in this sense does not include a mere wall, fence, monument, hoarding, or similar structure, though designed for permanent use where it stand; nor a steamboat, ship, or other vessel of navigation."

There are very few Texas cases defining the word "building." In the case of Peterson v. Stolz, (Tex. Ct. Civ. App.) 269 S.W. 113, the court held that a monument on a burial lot was not a building within the terms of the mechanics' lien statute, and the court said:

". . . In interpreting the word 'building,' in relation to mechanics' liens, it has been held that a 'building' includes only those structures which have capacity to contain and are designed for the habitation of a man or animals or the shelter of property. Railway Co. v. Vanderpool, 11 Wis. 119, 78 Am. Dec. 691. . . ."

In the case of Johnson v. State, 96 Tex. Cr. R. 216, 257 S.W. 351, the court held that a cattle dipping vat was not a building.

The noun "material" is defined in the case of Oliver v. State, 110 Tex. Cr. R. 263, 8 S. W. (2d) 184, as follows:

". . . 'materials' include such articles as enter into and form a part of the finished product; while 'equipment' imports 'the most necessary to enable the contractor to perform the agreed service, the tools, implements, and appliances which might have been previously used or might be subsequently used by the contractor in carrying on other work of like character.' . . ."

We have not been able to find any Texas cases in which the court discusses the term "building material;" but, as pointed out above, there are Texas cases discussing separately the word "building" and the word "material." However, there are cases in other jurisdictions in which the term "building material" is discussed. In the case of Ward v. Kadel, 38 Ark. 174, the court indicated that "building material" was anything essential for building any kind of house. (See 12 Corpus Juris Secundum 389). In the case of Hundhausen v. Bond, 36 Wis. 29, the court held that excavated dirt that had been piled in the street was not "building material" unless some person had placed it there for the "purpose of using it in his building." A correct statement, according to our view, was made by the court in the case of Schaible v. Board of Adjustment, 15 N.J. Misc. 707, 194 Atl. 388, as follows:

"Building materials normally consist not only of lumber, bricks, stone, and iron, but of paints, varnishes, and many other substances used in building construction. . . ."

A similar statement was made in the case of Lawrence v. Comstock, 124 Mich. 120, 82 N. W. 808, as follows:

". . . In the first place, it is not improbable that the term was used to cover other material besides lumber, such as lime, brick, sand, nails, lath, hair, and other supplies and articles designed for building. . . ."

The foregoing cases represent the majority thought on the question, that is, that "building materials" are limited to those things that go into and become a part of a building. However, some cases adopt a broader meaning, as is illustrated by the case of Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So... 254, in which the court held that the Legislature of Alabama intended for the term "building material" in an exeeption in a tax statute to include railroad cross ties and "material of all kinds used in construction work."

As we are convinced that the adjective "building" in the term "building material" has reference to the noun "building," instead of the verb "build," it is important that we determine what we are "buildings". In the case of Trussell v. Gay, 13 Gray (Mass.) 311, the court said:

"'The word "building" cannot be held to include every species of erection on land, such as fences, gates or other like structures. Taken in its broadest sense, it can mean only an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament, or use, constituting a fabric or edifice, such as a house, a store, a church, a shed.'"

In the case of City of Concord v. Morgan, 74 N. H. 32, 64 Atl. 725, the court said:

". . . all permanent structures intended to shelter human beings or domestic animals, or to receive, retain, or confine the goods in which a person deals, or to house the tools or machinery he uses or the persons he employes in his business, are commonly called 'buildings.' . . ."

A similar definition was approved in the cases of Randall v. Atlantic Advertising Service, 159 Ga. 217, 125 S. E. 462, Town of Union v. Ziller, 151 Miss. 467, 118 Sou. 293, and Goedecke v. Zurich General Accident & Liability Ins. Co., (Mo. App.) 7 S.W. (2d) 309.

The determination of the question, what is a building, is of no greater importance in the present inquiry than the determination of what is "material." The very essence of the word "material," in the connection here used, is that it means those simple things that enter into the construction of a building as elements of structure. The term "material" does not connote a finished or fabricated thing, whether building or other structure. It means those things of which the fabricated structure is composed. This distinction is what differentiates between the material and the building or structure. Of course, the materials upon being fabricated do become a part of, and therefore constitute the structure, but the fabricated article, whether house or fixture therein is no longer "materials" in the commonly accepted meaning of that term. It is a building or a cooling system or a heating system or a ventilating system, or a plumbing system, as the individual fabrication may be. It is noteworthy, too, that such fabricated structure of such enumerated systems is not itself a building in any just sense concerning the present inquiry, but nevertheless it is a fabricated structure,

machine, or utility, and has ceased to be "material." The identity of the materials entering into the fabrication has been lost--consumed--it is frequently said in the use thereof. This, we think, is the final test of the intention of the statute, and affords the answer to your many questions.

Many fabricated articles, however, by common use are such as are not only convenient but considered even to be essentials to the modern conception of comfortable housing. Thus, the modern house is not ready for actual habitation until it has its heating system, its cooling system, its electric system, its sewer system, its cooking system, and the like. This does not mean, however, that such conveniences or even necessities are to become actual fixtures to the realty, for in many if not most instances they are not such real fixtures--but remain throughout as personal property. Thus, the heating furnace, and the cooling apparatus, the electric fixtures, and the like, may be and are frequently utilized without becoming attached to the realty in such way as to become a real fixture serving all the while the requirements of the owner or occupant. Certainly, in such cases the fabricated system could not possibly be considered building material, for they have not entered into the structure of the house in any way whatsoever. Neither can it be argued with a good reason that by becoming attached to the building in such way as to become a fixture to the real estate that they thereby have been galvanized into building materials, for their essential nature has not been changed. The principal and only substantial change that can result from their attachment so as to become permanent real fixtures is one of convenience controlled largely by the want and demands and the abilities financially of the owner.

One can hardly think of any fabricated system, machine, instrument, or utility for the home, that may not be permanently attached to the building so as to become a part of the realty, but this does not change the essential nature of the things thus attached.

From what we have said, those things which are useful only in the fabrication and construction of a building are not themselves necessarily building materials. Thus, carpenter's tools, such as hammers, saws, planes, sanders, polishers, and the like, are in no sense building materials. They are implements and tools for building, but they survive their use, and unlike the building materials actually wrought into the structure they do not perish with their use. Those materials, however, that are

consumed in their use in connection with the construction of the building are "building materials," examples being sand-paper and paint brushes. This distinction is illustrated by the case of Troy Public Works Co. v. City of Yonkers, 207 N. Y. 81, 100 N.E. 700, in which the court said:

"In view of what was written for this court in Schaghticoke Powder Co. v. Greenwich & J. Ry. Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. (N.S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443, there remains very little to be said in the case at bar. In the Schaghticoke Case the plaintiff furnished dynamite and other explosives to a contractor for use in the construction of a railroad, and then filed its lien for the unpaid price. The question was whether these explosives were materials within the purview of the statute. We decided that they were, because they were not only used in the construction of the work, but were literally 'used up' in its performance. The dynamite and powder were put into the work and were consumed in the operation. They were as much a part of the materials that went into the structure as the various constituents that lost their separate identity in becoming part of the plaster, cement, or concrete. For the purpose of illustrating this idea we said: 'The argument that dynamite is not a material, but a part of the contractor's plant which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars, and the like are tools and appliances which, while used in the doing of the work, survive its performance and remain the property of their owner. Not so, however, with materials that are used up in the performance of the work, and are thereafter invisible except as they survive in tangible results.' 183 N. Y. 312, 76 N. E. 155, 2 L. R. A. (N.S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443. The steam shovel in the case at bar did not go into the work as material. It was a machine used on the work, not by the owner but by his lessee, and

it was returned to the owner just as it was re-
ceived, necessary wear and tear excepted. It was
not material, either according to the definitions
of the lexicographers, or under the decisions in
other states where they have lien statutes similar
to our own. . . ."

The same reasoning was adhered to in the Texas case of
Stone v. Morrison and Powers, 294 S. W. 641 (Reversed on other
grounds 298 S. W. 538) in which the court said:

". . . The word 'material' means 'the sub-
stance of which anything is made.' The pile-
driver was not a substance of which the concrete
piles were made, but was an equipment to be used
in the making. . . ."

In the case of some of the materials listed in your
opinion said materials can be used for several purposes, that
is, they can be used as "building materials" and they can be
used as some other kind of materials. For example, light woven
wire can be used as a "building material" by using it in the
walls of stucco buildings, or it can be used so that it will
not be a "building material" by using it as a chicken fence.
In the case of materials that can be used as "building materials"
and also as non-building materials if a lumber yard operator
keeps said material in stock in order to have a complete stock
of "building material" and in order to fill "building material"
purchaser's needs it should be considered "building material"
within the meaning of the Texas Chain Store Tax Law. If a lum-
ber yard operator has in stock wood-screws that are appropriate
for fastening hinges inside of a house, it would not affect the
liability of the operator for chain store taxes if a purchaser
used said wood-screws for something other than a "building mat-
erial," for example, for fastening a "no-hunting" sign to a
tree.

It is not strictly a question of whether or not a
place is a lumber yard, as that term is commonly understood,
but it is a question of whether or not the place is "engaged
exclusively in the sale of lumber and building material." How-
ever, we think it is apparent that the Legislature was thinking
of a lumber yard when it passed this exemption. The only case
we have found that decides whether or not a particular place
is a lumber yard or not within the common understanding of the

term is the case of Planter's Lumber Co. v. Wells, 147 Miss. 279, 112 Sou. 9. The following quotation shows what was sold in the lumber yard involved in that case, to-wit:

"'. . . 75 per cent. in value of all materials bought and sold by defendant consisted of lumber, 10 per cent. wooden shingles, lath, sash, doors, and windows and articles of like kind, making a total of 85 per cent. in value of all materials handled and sold by defendant as aforesaid, consisting of lumber, sash, doors, and windows and articles of like kind, and the remaining 15 per cent. consisting of other building materials, such as composition shingles, roofing, cement, lime, and plaster, and what is commonly known as builder's hardware, consisting of sash weights and cord, pulleys, grates, nails, door and window hinges, and other building hardware similar in kind, and other items of building supplies and material not included in such articles as lumber, roofing, shingles, laths, sash, doors, and windows, and articles of like kind, hereinafter called "other materials."'"

Another important consideration bears very directly upon the proper construction to give to this statute. It is this: We think it was never intended by the Legislature to permit lumber yards dealing in building materials in general likewise to deal in those articles involved in the present inquiry--to handle such articles tax free; and at the same time to make those business concerns taxable which happen to deal alone in such fabricated utilities. Such a law, if it were intended by the Legislature, might be invalid as a discrimination without reasonable factual basis for different legislative treatment; but this question need not be decided since our conclusion does not turn upon that consideration.

What we have said here finds support in, and is in harmony with our Opinion No. 0-2080, dated May 2, 1940, addressed to Honorable George H. Sheppard, Comptroller, and a prior opinion by this department, dated January 3, 1936, likewise addressed to Honorable George H. Sheppard, Comptroller.

Honorable George H. Sheppard, page 20

        We will now answer your questions, keeping in mind that <u>our answers are limited to the facts stated by you</u>. We will endeavor to answer each question by saying "yes" or "no" as to whether the material described in the question is "building material," within the meaning of this statute, to-wit:

1.  Cooling Systems: -

    1-A.  Cooling System with Fan:  "No."

    1-B.  Other Cooling Systems:  "No."

2.  Heating Systems: -

    2-A.  Heating System with Gas Floor Furnace: "No."

    2-B.  Wall Heating System with Gas Burner: "No."

3.  Exhaust Fans (Kitchen): -

    3-A.  For Hoods:  "No."

    3-B.  For Rooms:  "No."

4.  Ventilators: -

    4-A.  Ventilators in Foundation and Below First Floor Line:  "Yes."

    4-B.  Ventilators in Structure to Discharge Fumes, Odor and Sewer Gas:  "Yes."

    4-C.  Ventilators in Roof Construction:  "Yes."

5.  Electrical Fixtures: -

    5-A.  Electric Wiring and Conduit:  "Yes."

    5-B.  Electrical Lighting Fixtures:  "No."

6.  Gas Fixtures Forming an Integral Part of the Structure: -

    6-A.  Gas Piping and Fittings:  "Yes," - The roughing in.

Honorable George H. Sheppard, page 21

    7.  Plumbing: -

        7-A.  Pipes and Fittings:  "Yes," - the roughing in.

        7-B.  Plumbing Fixtures:  "No."

        7-C.  Hot Water Heating System:  "No."

        7-D.  Kitchen Sinks:  "No."

        7-E.  Septic Tanks:  "No."

    8.  Carpenter's Tools:  "No."

    9.  Paint Brushes:  "Yes."

    10.  Sand Paper:  "Yes."

    11.  Barbed Wire, Woven Wire of all kinds, steel fence posts and metal gates:  "No," except that material described in this question that is sometimes used in the construction of a building and is kept in stock in order to fill such needs is building material.

    12.  Metal Tank Materials:  "No."

    13.  Windmill Parts:  "No."

    14.  Pump Parts:  "No."

        We hope the foregoing opinion answers your questions, and that it will be of value to you in administering the Texas Chain Store Tax Law.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED NOV 19, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By

Ocie Speer
Assistant

OS:db

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE